

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

GROVER SELLERS
~~XXXXXXXXXXXXX~~
ATTORNEY GENERAL

Honorable C. J. Wilde
County Auditor
Nueces County
Corpus Christi, Texas

Dear Sir:

Opinion No. O-6192
Re: Expenditures of county funds in connection with primary elections

We have carefully considered your opinion request of recent date from which we quote:

"The question has come before this office as to the expenditure of funds by Nueces County covering certain amounts in connection with the holding of the first and second primaries in Nueces County. Article 2996 quoted herewith:

"'All expenses incurred in providing voting booths, stationery, official ballots, wooden or rubber stamps, tally sheets, polling lists, instruction cards, ballot boxes, envelopes, sealing wax and all other supplies required for conducting a general or special election shall be paid for by the county, except the cost of supplying booths for cities. All accounts for supplies furnished or services rendered shall first be approved by the Commissioners Court, except the accounts for voting booths for cities.'

Listing the expenditures for election supplies mentions 'for conducting a _general or special election_ shall be paid for by the county.'

"Article 2956 makes it mandatory that the county clerk or a deputy county clerk handle the voting by absentee. Art. 3108, EXPENSES OF PRIMARY, states that the county executive committee shall be responsible for the official printing of ballots, etc. and other necessary expenses of holding such primaries.

"We believe that even though the absentee voting is handled through the County Clerk's

office we feel that the deputy county clerk is
acting in the capacity of an election officer
and that any expenses in connection with the
absentee ballots are a part of the expenses to
be paid for by the county committee.

"We shall be pleased to have your advise as
to whether or not Nueces County should pay from
its funds expenditures of this nature."

We quote from 16 Texas Jurisprudence 81, Section 65,
as follows:

"To the courts has been presented the
question as to whether it is within the power
of the legislature to make provision so as to
devote the public revenues of the state to the
payment of the primary election expenses of the
parties. It is to be noted that the constitu-
tion does not inhibit payment of expenses of
general elections out of public funds. But the
payment of the expenses of purely party elections
is a different matter because of the nongovern-
mental nature of a primary election and the
private character of a political party. Such
agencies are not instrumentalities of the state;
and it is considered that the taxing power may
not be used in aid of any political party or to
promote the purpose of all political parties.
Accordingly, it has been held that payment of
expenses of primary elections is not a public
purpose for which public revenues may be used,
and that a statute providing for such use is un-
constitutional and unenforceable. However, it
cannot be questioned that the legislature has
power to direct payment out of public funds
raised by taxation of any and all reasonable ex-
penses which may be incurred in the mere regula-
tion--but not in the maintenance--of primary
elections."

Several cases are cited in support of the text, among
them the Supreme Court cases of Waples v. Marrast, 108 Tex. 5,
L.R.A. 1917A. 253, 184 S.W. 180 and Beene v. Waples, 108 Tex.
140, 187 S.W. 191.

In Waples v. Marrast the court had under consideration
the validity of an act of the Thirty-third Legislature known as
the Presidential Primary Act which authorized and required the
expenses of such primary to be paid out of the county treasury

of each county.  The court held such provisions violative of our Constitution.

Because we consider the language and reasoning directly applicable to your inquiry, we quote at length from the language of Chief Justice Phillips in that case:

> "The only serious constitutional question involved by the act is its requirement that the expense of the primary election shall be borne out of the public treasury of the counties.  This presents, nakedly, the question, whether it is within the power of the Legislature to devote the public revenues of the State to the payment of the primary election expenses of political parties.  The general primary law relating to the nomination of party candidates for state, district and county offices imposes such expense upon the candidates.  Article 3104, Rev. St. 1911.  In the legislative history of the State, this is the first effort, so far as we are aware, to make the expense of a party election a charge upon the public revenue.

> "Section 3, Article 8 of the Constitution declares:

> 'Taxes shall be levied and collected by general laws and for public purposes only.'

> "By section 52, Article 3 it is provided:

> 'The Legislature shall have no power to authorize any county, city, town or other political corporation * * * of the State, to lend it credit or to grant public money * * * in aid of, or to, any individual, association or corporation whatsoever,' etc.

> "The funds possessed by the counties of the State and available for the payment of the expense of the primary election provided for by this act, are only those which are derived by taxation.  If the payment of such expense is, within the meaning of the Constitution, 'a public purpose,' the act is valid in its provision that it shall be borne out of the public treasury of the counties;  otherwise it is not.

> "(4) Taxes are burdens imposed for the sup-

port of the government. They are laid as a
means of providing public revenues for public
purposes. The sovereign power of the State may
be exercised in their levy and collection on-
ly upon the condition that they shall be devoted
to such purposes; and no lawful tax can be laid
for a different purpose. Whenever they are im-
posed for private purposes, as was said in
Brodhead v. Milwaukee, 19 Wis. 670, 88 Am. Dec.
711, it ceases to be taxation and becomes plunder.

"* * * * *

"The great powers of the State,--and the
taxing power is the one to be always the most
carefully guarded,--cannot be used, in our opin-
ion, in aid of any political party or to promote
the purposes of all political parties. They are
no more to be made the objects of governmental
bounty or favor than any other class of public
organizations into which groups of citizens may
form themselves. Expenses incurred in the fur-
therance of their objects can no more be de-
frayed out of the public treasury than the ex-
penses of other associations of individuals.
If it is constitutional to use the public revenues
to pay the cost of their primary elections, it
would likewise be constitutional to pay the cost
of their candidates' campaigns. If the consti-
tutional barrier is removed in the one case, it
cannot be restored in the other; but it will
have to be admitted that any and all kinds of
expense of political parties may be lawfully im-
posed as a part of the public burden of taxation.

"For a stronger constitutional reason than
would apply to other kinds of public organiza-
tions is it the clear duty of the State to with-
hold the use of its public revenues as an aid to
political parties, and particularly as an aid
in the holding of their party elections. The
object of such parties is the political control
of the government; and we regard it as a funda-
mentally sound proposition that no power of the
government can be constitutionally used in fur-
therance or aid of the effort of any class or
kind of organization, political or otherwise,
to obtain the control of the government.

"To provide nominees of political parties
for the people to vote upon in the general elec-

tions, is not the business of the State. It is not the business of the State because in the conduct of the government the State knows no parties and can know none. If it is not the business of the State to see that such nominations are made, as it clearly is not, the public revenues cannot be employed in that connection. To furnish their nominees as claimants for the popular favor in the general elections is a matter which concerns alone those parties that desire to make such nominations. It is alone their concern because they alone are interested in the success of their nominees. The State, as a government, cannot afford to concern itself in the success of the nominees of any political party, or in the elective offices of the people being filled only by those who are the nominees of some political party. Political parties are political instrumentalities. They are in no sense governmental instrumentalities. The responsible duties of the State to all the people are to be performed and its high objects effected without reference to parties, and they have no part or place in the exercise by the State of its great province in governing the people.

"* * * * *

"Holding an act of the Legislature to be unconstitutional is never a welcome duty, and this court has never performed it except with reluctance. It is a duty, however, plain and unmistakable when upon mature consideration such is the conviction of the court. The Constitution is the supreme law of the State, and no consideration should be suffered to stand in the way of its enforcement. Tested by legal principles which are clear and established, the payment of the expenses of primary elections of political parties is not a public purpose for which public revenues may be used; and in our opinion the act in question is therefore unconstitutional and unenforceable." (Emphasis ours)

Your expression of belief that for the purposes of absentee voting in a primary election that the County Clerk and his deputies act as election officers is substantiated by the terms of Subdivision 10 of Article 2956, Vernon's Annotated Civil Statutes:

"The county clerks, their deputies and of-

ficers acting under this Article shall be con-
sidered as judges or officers of election within
the scope of Articles 215 to 231, inclusive, of
the Penal Code of Texas, and all amendments
thereto, and be punishable as in said Articles
respectively, provided in the case of judges or
officers of election.  ......."

In view of the strong reasoning employed in the above-quoted case, you are advised that such expenditures as you mention should not be paid from any county funds.  In our opinion, such payment is not only unauthorized but expressly prohibited by the highest authority--the Constitution of Texas --in the sections so aptly cited by the late Chief Justice of our Supreme Court.

In this connection we do not feel it amiss to cite you to a pertinent requirement of another of our statutes.  Article 2340, Revised Civil Statutes of Texas, sets forth the written obligation to be entered into in his official bond by every county commissioner in Texas:  "that he will not vote or give his consent to pay out county funds except for lawful purposes."

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By s/Benjamin Woodall
Benjamin Woodall
Assistant

BW/JCP/wc

APPROVED SEP 13, 1944
s/Geo. P. Blackburn
(Acting) ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman